Valerie (Smith) HOUSTON,
Appellant (Plaintiff),

v.

James E. SMITH, Appellee (Defendant).

No. 93–191.

Supreme Court of Wyoming.

Sept. 30, 1994.

Kenneth R. Marken, Casper, for appellant.

Donald L. Painter, Casper, for appellee.

Before GOLDEN, C.J., THOMAS, MACY,* and TAYLOR, JJ., and BROWN, J., Retired.

THOMAS, Justice.

The issue presented in this case involves the correct application of the definitions of "income" and "net income" found in WYO. STAT. § 20–6–301(a)(i) and (ii) (Cum.Supp. 1993). In arriving at "income" and "net income," pursuant to our statute, the trial court relied upon the federal income tax return of James E. Smith (Smith). The federal tax return figures were utilized in arriving at "income" and "net income" for the purpose of determining Smith's income in computing presumptive child support according to WYO. STAT. § 20–6–304 (Cum.Supp.1993). We hold that federal income tax computations differ

* Chief Justice at time of oral argument.

in significant respects from the computations required by Wyo.Stat. § 20–6–301(a), and the district court erred in substituting the federal income tax concepts to arrive at those critical amounts. The Order of Modification entered in the district court is reversed, and the case is remanded to that court for an appropriate determination of child support in accordance with this opinion.

Valerie Smith Houston (Houston), in her Brief of Appellant, states the issues to be:

I. The trial court erred in its determination of the Appellee's "income" and "net income" as defined by W.S. § 20–6–301, *et seq.*, in one or more of the following ways, thus resulting in an erroneous computation of the Presumptive Child Support:

A. By adopting the Appellee's "taxable income" from Appellee's IRS Form 1040 as the equivalent of his "net income" as defined by W.S. § 20–6–301(a)(ii).

B. By permitting losses generated by the Appellee's current wife's business to reduce Appellee's "income" as defined by W.S. § 20–6–301(a)(i).

C. By allowing depreciation to be categorized as a "legitimate business deduction", thus reducing Appellee's "income" as defined by W.S. § 20–6–301(a)(i).

II. The trial court erred in its failure to require Appellee to pay reasonable attorney fees and court costs to the Appellant under W.S. § 20–2–113(m), although the Appellee sought to deviate from the Presumptive Child Support amount determined by the court.

III. The trial court erred in denying the Appellant a retroactive increase of her child support to the date notice of her Petition was given to the Appellee, as provided for by W.S. § 20–2–113(a)(ii).

As appellee, Smith offers the following counterstatement of the issues:

1. Whether the District Court properly determined Appellee's "income" and "net income".

2. Whether the District Court erred in permitting losses generated by Appellee's wife's business to reduce Appellee's "income".

3. Whether the District Court erred by permitting depreciation to be used in computing Appellee's "income".

4. Whether the District Court erred in not requiring Appellee to pay attorney's fees.

5. Whether the District Court erred in denying Appellant's request for retroactive child support increase.

Houston and Smith were divorced in 1981. Under the decree, Smith was required to pay $175 per month in child support for each of the two minor children of the parties. On October 23, 1992, Houston filed a petition to modify the total of $350 per month being paid for child support, and the matter was tried before the district court on April 30, 1993. The basic income information for purposes of the statutory computation essentially is undisputed in this case.

After applying income and expense items from Smith's federal income tax return for 1992, the district court found his "net income" was $31,330 for that year. This was converted to a monthly amount of $2,610.83. That figure was used by the district court to calculate Smith's share of the parties' joint support obligation pursuant to Wyoming's presumptive child support law, Wyo.Stat. § 20–6–304. In accordance with the decision letter of the court authored on May 20, 1993, an Order of Modification was entered on June 15, 1993. Houston appealed the Order of Modification that represented the ultimate decision of the trial court.

In his 1992 IRS Form 1040 on which Smith reported his income for federal tax purposes, he took a deduction from gross income in arriving at adjusted gross income for a loss suffered by his current wife in the operation of a retail business situated in Grand Junction, Colorado known as The Little Basquette Shoppe. He also took a depreciation deduction for various rental properties that he owned in Casper. Houston contends these federal income tax deductions were not permissible in arriving at "income" and "net income" under the Wyoming statute, and the overall method adopted by the district court in arriving at Smith's "net monthly income,"

as defined by Wyoming's Presumptive Child Support Guidelines, was erroneous.

In the context of this case, we must decide how "income" and "net income" are to be determined pursuant to Wyo.Stat. § 20–6–301(a)(i) and (ii). The statutory definitions are:

(i) "Income" means any form of payment or return in money or in kind to an individual, regardless of source. Income includes, but is not limited to wages, earnings, salary, commission, compensation as an independent contractor, temporary total disability, permanent partial disability and permanent total disability worker's compensation payments, unemployment compensation, disability, annuity and retirement benefits, and any other payments made by any payor, but shall not include any earnings derived from overtime work unless the court, after considering all overtime earnings derived in the preceding twenty-four (24) month period, determines the overtime earnings can reasonably be expected to continue on a consistent basis. In determining income, all reasonable unreimbursed legitimate business expenses shall be deducted. Means tested sources of income such as Pell grants, aid to families with dependent children (AFDC) basic grants, general assistance (GA), food stamps and supplemental security income (SSI) shall not be considered as income. Gross income also means potential income of parents who are voluntarily unemployed or underemployed;

(ii) "Net income" means income as defined in paragraph (i) of this subsection less personal income taxes, social security deductions, cost of dependent health care coverage for all dependent children, actual payments being made under preexisting support orders for current support of other children, other court-ordered support obligations currently being paid and mandatory pension deductions, arrearage payments excluded.

We must use these definitions and apply them first to Smith's sources of income in arriving at "income" under the statute. The determination of "net income" then depends upon a determination of the appropriate de-duction of "reasonable unreimbursed legitimate business expenses." Wyo.Stat. § 20–6–301(a)(i).

The dollar amounts to be invoked for making these determinations correctly were identified by the trial court as a matter of fact. The federal income tax definitions the trial court must have invoked in arriving at the determination of "net income" do not parallel our state statutory definitions, and there is no indication that our legislature intended they should. The result of applying the federal tax definitions was an erroneous computation of Smith's net income for purposes of applying the presumptive child support standards.

It is useful to compare the definitions in the Internal Revenue Code for the terms "gross income," "adjusted gross income," and "taxable income." The statutory definitions found in 26 United States Code §§ 61–63 (Supp.1993) are succinctly summarized in Bender's Master Federal Tax Handbook (1992):

Gross income includes all income from all sources. Only items specifically exempted are excluded. Gross income is taxed in year of its actual or constructive receipt to individual who earns it or who owns property generating income.

¶ 3.100

Adjusted gross income is gross income less "above the line" deductions. These deductions include trade and business expenses, losses from sale or exchange of property, alimony, retirement savings for employees and self-employed persons, and rent and royalty expenses. Adjusted gross income determines amount of many deductions and credits such as miscellaneous itemized deductions.

¶ 2.300

Taxable income is adjusted gross income minus personal exemptions and either standard deduction or itemized deductions. Taxable income is amount upon which tax rate is applied to compute tax owed.

¶ 2.500

Houston contends that, when the determination of income is accomplished under

WYO.STAT. § 20–6–301(i), it relates only to the income of "an individual," and the statute later alludes to "any payor." We agree with Houston's argument that these terms are unambiguous, and there is no indication the legislature intended, in any manner, to include "spousal income" or "joint income" in the computation required by the statute to provide the premise for calculating presumptive child support owed by one of the parents. The ineluctable conclusion must be that, if only the individual parent's income is to be used in making these calculations for income and net income, no justification can be found for relying upon a joint federal income tax return. This particularly is true when the joint income tax return includes items attributable to the payor's current spouse, who has no responsibility for the child support.

■ Had Smith's current wife shown a profit from the operation of her business in Grand Junction, Smith would protest and, justifiably, contend the amount should not be included in his "income" for purposes of child support. The plain meaning of "individual" and "payor" precludes that result. It seems apparent the converse must be true and, as in this instance, when the current spouse of the responsible parent suffers a business loss, that loss cannot be deducted in arriving at the "net income" of the responsible parent. Clearly, the trial court erred in invoking a computation that included a deduction for the loss incurred by Smith's current wife from The Little Basquette Shoppe. That loss cannot be used in calculations of Smith's "net income."

■ We can identify no significant disparity between Wyoming's statutory definition of "income" and the federal definition of "gross income" because it appears that both definitions contemplate all sources of income. There is no counterpart in Wyoming's child support statutes to the federal concept of "adjusted gross income." An examination of Smith's income tax return demonstrates he legally took advantage of the several deductions allowed arriving at "adjusted gross income" for purposes of his federal income tax return. He subtracted all the above the line business expenses, rental depreciation, and business losses in calculating his adjusted gross income for purposes of the joint federal return. Then, deductions also were claimed for the standard deduction for a married couple and personal exemptions which were subtracted to arrive at taxable income. That is the "amount upon which [the] tax rate is applied to compute tax owed." BENDER'S at ¶ 2.500.

In Wyoming, "net income" is derived from income by taking the specific allowed deductions articulated in WYO.STAT. § 20–6–301(a)(ii). Those items are:

1. personal income taxes;
2. social security deductions;
3. costs of dependents' health care coverage;
4. support payments currently being made for other children;
5. other court-ordered support obligations; and
6. mandatory pension deductions.

The only factor in the Wyoming statutory definitions of "income" and "net income" that relates in any way to the federal above the line deductions is the phrase that permits **an individual** to deduct "all reasonable unreimbursed legitimate business expenses" in arriving at income. WYO.STAT. § 20–6–301(a)(i).

It is obvious the deductions specified in the Wyoming statutes to be used in arriving at "net income" are different and disparate from those invoked under the federal law to arrive at either "adjusted gross income" or "taxable income," which include:

1. trade and business deductions, including certain trade and business deductions of employees;
2. losses from property sales or exchanges;
3. rent and royalty deductions;
4. specified deductions for life tenants and income beneficiaries of property;
5. pension, profit-sharing, and annuity plans of the self-employed;
6. retirement savings;
7. lump sum distributions;

8. amounts forfeited because of early withdrawal of savings accounts or time deposits;

9. alimony;

10. expenses for reforestation;

11. specified mandatory repayment amounts of supplemental unemployment compensation benefits;

12. the standard deduction;

13. itemized deductions;

14. any personal exemptions.

We hold there are fundamental differences in the Wyoming statutory scheme and the federal income tax scheme, which foreclose any reliance upon the figures derived for taxable income on a federal income tax return in order to compute "net income" for purposes of the Wyoming statute. The concepts simply are different.

■ The deduction for depreciation of Smith's rental properties also fails to fit within the statute's definition of "reasonable unreimbursed legitimate business expenses." WYO.STAT. § 20–6–301(a)(i). The Montana Supreme Court decided a case that is factually very similar to the circumstances found in this case. That court affirmed the trial court and held depreciation—whether accelerated or straight line—could not be used as a deduction in calculating the father's net income for purposes of child support modification. *Stewart v. Stewart*, 243 Mont. 180, 793 P.2d 813 (1990). *See also In Re Marriage of Mitchell*, 229 Mont. 242, 746 P.2d 598 (1987). The court in *Stewart*, 793 P.2d at 815, articulated its rationale in this way:

> Since the purpose of depreciation is to assist a person in **regaining** their expenditures, it does not follow that depreciation is a business **expense** for the calculation of disposable income under the Guidelines. (Emphasis in original.)

We are satisfied the rationale of the Montana decision is correct and hold, in this case, depreciation did not reduce the net income Smith had in 1992. It constitutes a book reimbursement to him, and it should not be subtracted from income in arriving at net income for calculating his child support obligations. This conclusion is justified by the interest of the state in assuring adequate economic support for all minor children. A reimbursement of a capital expenditure does not fit within that policy.

The net effect of the district court's approach was to permit Smith to take some of the deductions, reflected in Schedule C on his federal income tax return, which do not comply with Wyoming's statutory definition of "income." While some of those deductions clearly are "reasonable unreimbursed legitimate business expenses," (WYO.STAT. § 20–6–301(a)(i)) such as expenses for advertising, car and truck expense, the cost of insurance, repairs and maintenance, business supplies, taxes and license fees, the cost of utilities, travel expenses, meal expenses and entertainment, and the general category for miscellaneous business expenses, the district court went beyond those items. It encompassed in its computations the deduction for a $46,332 loss on The Little Basquette Shoppe business; depreciation expense on rental properties; the standard deductions; and the personal exemptions, all as shown on the federal income tax Form 1040. These items do not come within Wyoming's statutory definition of "income" or of "net income." Our statute in providing for the computation of "net income" permits deductions only for personal income taxes, social security deductions, health care costs for dependents, child support payments as well as other court-ordered support obligations, and mandatory pension deductions. The deductions authorized under the clear language of the Wyoming statute do not include those that the district court allowed Smith to claim in arriving at his share of the joint child support obligation.

Under our statute, we note the calculation of Smith's "income" probably should be increased by including one-half of the total joint earned interest and dividend income, which was $1,108,[1] as listed on Schedule B of

---

1. The interest and dividend amounts were not brought before this Court as issues on appeal as were those issues concerning depreciation and the business losses of Smith's wife. However, because the interest and dividend amounts are listed on Schedule B as "joint income," we find Smith's net income for child support calculations should be increased by half of the amounts listed,

his 1992 federal income tax return. For the reasons set forth above, his "net income" should be increased by the depreciation expense of $6,805 as reflected in Schedule C on his 1992 Form 1040 and, of course, the income should be increased by the $46,332 loss that was claimed.[2]

Our calculations result in a monthly "net income" for Smith of $10,261.33. If this figure were used, it would be 88.24% of the total net joint monthly income of Houston and Smith. The result under our presumptive child support statute then is that his *pro rata* share of child support for the two children would be $1,917.15. It follows that we must reverse the decision of the trial court with respect to Smith's "net income," specifically requiring that the depreciation of the rental properties and his wife's business loss not be included as deductions in arriving at his "net income" for the purpose of determining his *pro rata* share of child support.

 We affirm the decision of the trial court with respect to the remaining issues. The matter of awarding attorney fees and the decision of the judge to not allow a

retroactive increase of child support to the date of Houston's petition were within the sound discretion of the trial court. We do not disturb the trial court's judgment with respect to those matters within its discretion on appeal, unless there was a clear abuse of that discretion. *Halberstam v. Cokeley,* 872 P.2d 109 (Wyo.1994); *Vanasse v. Ramsay,* 847 P.2d 993 (Wyo.1993); *Martin v. State,* 720 P.2d 894 (Wyo.1986). On remand, the adjustment of Smith's *pro rata* share of the child support should take effect, however, as of the date of the initial order, May 20, 1993.

We reverse in part and affirm in part. The case is remanded to the district court for further proceedings in arriving at the appropriate child support contribution by Smith in accordance with this opinion.

or $1,108.00, rather than the actual total of $2,216.00 shown for both Smith and his current wife on the 1992 Schedule B. The addition of $1,108.00 as part of Smith's income comports with the requirements of Wyo.Stat. § 20–6–301(a)(ii) (Cum.Supp.1993).

2. Additionally noteworthy is the fact that the Montana Supreme Court affirmed the trial court's decision to disallow the father's business losses in calculating his income for child support purposes. *Stewart,* 793 P.2d at 814.