# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 141

**OCTOBER TERM, A.D. 2020**

**November 20, 2020**

BENJAMIN GREER MARQUIS,

Appellant
(Defendant),

v.

LAURA ANN MARQUIS
n/k/a LAURA ANN FAUSETT,

Appellee
(Plaintiff).

S-20-0046

*Appeal from the District Court of Uinta County*
*The Honorable Joseph B. Bluemel, Judge*

*Representing Appellant:*
　　Danielle L. Schumacher, Schumacher Law, P.C., Rock Springs, Wyoming.

*Representing Appellee:*
　　Mark W Harris, Harris Law Office, P.C., Evanston, Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]     Benjamin Greer Marquis (Father) appeals from the district court's order modifying the child support he pays to Laura Ann Fausett (Mother), formerly Laura Ann Marquis, for the benefit of the parties' three minor children.  Father claims the district court abused its discretion by calculating child support without an evidentiary hearing.  He challenges the district court's computation of his income, refusal to deviate downward from the presumptive support, and determination that shared contribution was unwarranted.  We find no abuse of discretion and affirm.  We deny Mother's Wyoming Rule of Appellate Procedure 10.05 request for sanctions.

### ISSUES

[¶2]     The issues are:

> 1.  Should the Court summarily affirm the district court because Father failed to designate the record on appeal?
>
> 2.  Did the district court abuse its discretion by not holding an evidentiary hearing before calculating child support?
>
> 3.  Did the district court abuse its discretion in determining child support?
>
> > a.  Did the district court abuse its discretion when it calculated Father's income?
> >
> > b.  Did the district court abuse its discretion when it did not allow a downward deviation from Father's presumptive child support?
> >
> > c.  Did the district court abuse its discretion when it did not use a shared responsibility calculation?
>
> 4.  Is Mother entitled to costs and reasonable attorney fees?

### FACTS

[¶3]     The parties divorced in 2012, and Mother was awarded primary custody of their three minor children.  Father was ordered to pay monthly child support of $863.07.

[¶4]     Following the divorce, Father relocated to Williston, North Dakota.  He remarried and his new wife (wife) has three children from a previous marriage.  Father and his wife

1

have a child together. In 2016, Father and his wife established Marquis Metal Works, LLC (Marquis Metal), an oil rig welding operation. Mother remained in Wyoming and also remarried. She and her husband have two children together. Mother continues to be a homemaker.

[¶5] In February 2018, Father filed a petition to modify custody, visitation, and child support, claiming a material change in circumstances. Mother responded with a petition to modify support. The parties reached an agreement on custody and visitation, and a Stipulated Order was entered in October 2019. The parties proposed that the remaining issues (child support and uncovered medical expenses) be presented to the district court through cross-memoranda with each party presenting written argument, supporting documentation, and proposed calculations. The district court accepted the parties' proposal to submit written argument and in December 2019, without a hearing, entered its order modifying child support.

[¶6] The district court calculated Father's net income by adding Father's business income to his personal income and then deducting income taxes paid and certain depreciation, to arrive at a total net income for each of the preceding three years.

## A. The 2016 Calculations

[¶7] The court determined Father's personal income was $62,259, as reflected on Father's personal tax return. The court then added Father's net business income to his personal income for child support purposes. In 2016, Father was the sole proprietor of Marquis Metal, which reported business income of $51,293. Marquis Metal had $46,429 in depreciation expense, which the court added back to the business income for a total of $97,722. The court next subtracted the portion of the depreciation expense attributable to Section 179 property—$23,528.[1] This resulted in net business income of $74,194. The court added Father's net business income and personal income, arriving at $136,453. Next, the court subtracted Father's federal income tax ($15,780) and state income tax ($944) to arrive at a 2016 net income of $119,729.

## B. The 2017 Calculations

[¶8] The district court found Father's 2017 personal income was $75,000, based upon his W-2. After 2016, Marquis Metal was incorporated as an S corporation. This entity was in place at the time the 2017 tax return was filed. The district court calculated

---

[1] "Section 179 property" is depreciable property that qualifies for an immediate tax deduction under Section 179 of the Internal Revenue Code, 26 U.S.C.A. § 179. A Section 179 election provides taxpayers an option for immediate depreciation versus the use of other methods of depreciation taken over a number of years.

Father's business income based on his approximate 51% ownership of Marquis Metal.[2] Father's K-1 reflected his share of earned business income at $559,995. In 2017, Marquis Metal claimed $261,329 in depreciation expense and Section 179 deductions of $289,418. The court added 51% of the depreciation ($133,278) to Father's business income and then subtracted 51% of the Section 179 deductions ($147,992) from Father's business income. The court also added 51% of tax-free distributions ($3,739 and $64,514) to Father's business income. This computation resulted in business income of $613,534. Father earned 71% of the total income reported on his and his wife's personal tax return. The sum of Father's pro rata share of the personal and business income was $688,534. The court credited Father with 71% of the income taxes paid and deducted $216,431—71% of the $304,832 federal income tax—from Father's income. The district court subtracted $16,133—71% of the state income tax of $22,722—from Father's income. Finally, the district court subtracted $4,650 in Social Security and $1,088 in Medicaid taxes from Father's income. The district court calculated Father's 2017 net income at $450,232.

## C.     The 2018 Calculations

[¶9]     The district court found Father's 2018 personal income was $76,923, as shown on his W-2. Based on Father's K-1 from Marquis Metal, it calculated his 2018 business income as $33,426. Marquis Metal deducted $312,410 in depreciation expense. Father's 51% of depreciation was $159,329. The court found none of this depreciation was Section 179 expense and added $159,329 to his income. The district court also attributed 51% of tax-free distributions ($6,723 and $213,125) to Father's income. Father's business income totaled $412,603 ($33,426 plus $159,329 plus $6,723 plus $213,125). His business and personal income totaled $489,526 ($412,603 plus $76,923). Father earned 67% of the total income reported on his and his wife's personal tax return, and the court attributed 67% of the income taxes to him. The court deducted $11,233—67% of the $16,766 federal income tax—from Father's income. The district court subtracted $1,294—67% of the $1,932 state income tax—from Father's income. The district court subtracted $4,769 in Social Security and $1,115 in Medicaid taxes from his income as well. Father and his wife received a federal tax refund of $56,772 and a state tax refund of $15,021. The district court added 67% of those refunds ($38,037 and $10,064) to Father's income. The district court calculated Father's net income for 2018 as $519,216.

[¶10] The district court averaged the calculated net income for these three years. It concluded Father had an average net annual income of $363,059 and an average net monthly income of $30,255. The court imputed to Mother a net monthly income of $1,186. Based on these numbers, the court determined Father's presumptive child support was $4,838 per month. The district court denied Father's request for a downward

---

[2] Father's wife holds the other 49% interest in the LLC.

deviation based on substantial contributions and his support of other children pursuant to Wyo. Stat. Ann. § 20-2-307(b) and denied Father's request for a "shared responsibility child support obligation" pursuant to Wyo. Stat. Ann. § 20-2-304(c). It ordered Father to pay presumptive monthly support of $4,838. Father appeals.

## *DISCUSSION*

### I. *Should the Court summarily affirm the district court because Father failed to designate the record on appeal?*

[¶11] Mother contends that we should summarily affirm the district court's order because Father failed to designate the record and failed to cite to the record in his brief, as required by the Wyoming Rules of Appellate Procedure.

[¶12] W.R.A.P. 3.05(b) provides,

> Appellant shall, contemporaneously with filing its brief in the appellate court and service of that brief upon appellee, file with the clerk of the trial court and serve on all parties and the appellate court clerk a designation for transmission of all parts of the record, without unnecessary duplication, to which appellant intends to direct the appellate court in its brief.

W.R.A.P. 7.01(g)(1) requires an appellant's brief to set forth the appellant's "contentions with respect to the issues presented and the reasons therefor, with citations to the authorities, statutes and pages of the designated record on appeal relied on[.]"

[¶13] Father concedes he failed to designate the record in accordance with the rules and that his brief lacks citations to the record. While Father did not designate a record when he filed his brief on March 27, 2020, he did file a designation of the record on May 22, 2020. Father's opening brief does not contain citations to the record but does contain citations to pertinent authority.

[¶14] This Court retains broad discretion over how to treat a violation of the Rules of Appellate Procedure. "The failure to comply . . . does not affect the validity of the appeal, but is ground only for such action as the appellate court deems appropriate . . . ." W.R.A.P. 1.03(a). In *Bingham v. Bingham*, 2007 WY 145, ¶¶ 7–9, 167 P.3d 14, 17 (Wyo. 2007), the father failed to designate a record when he filed his brief on appeal; he did, however, designate a record after the mother filed her brief. The mother argued that the appeal should be dismissed for father's failure to comply with the Rules of Appellate Procedure. "Because Father ultimately designated a record for the Court's review, albeit late, we decline[d] Mother's invitation to dismiss the appeal based upon a violation of W.R.A.P. 3.05(b)." *Id.* ¶ 9, 167 P.3d at 17. Here, as in *Bingham*, Father belatedly

4

designated a record for our review, and he set forth cogent arguments in his briefing. We are reluctant to grant sanctions under these circumstances and decline to do so. However, we feel compelled to remark that Father presents complex questions for review based on record-intensive facts. His failure to provide record citations has burdened the Court in its effort to understand and analyze the issues presented on appeal.

## II. *Did the district court abuse its discretion by not holding an evidentiary hearing before calculating child support?*

[¶15]  Father argues that the district court abused its discretion when it did not hold an evidentiary hearing to determine his income. Wyo. Stat. Ann. § 20-2-308 sets forth the evidence required to determine income for child support. Subsection (a) provides that "[n]o order" on child support "shall be entered unless financial affidavits [or testimony] which fully disclose[] the financial status of the parties" have been received by the district court. Wyo. Stat. Ann. § 20-2-308(a). Subsection (b) requires "[f]inancial affidavits [to] be supported with documentation of both current and past earnings" including, but "not limited to pay stubs, employer statements, or receipts and expenses if self-employed [and copies of tax returns]." Wyo. Stat. Ann. § 20-2-308(b). These requirements are mandatory. *Lemus v. Martinez*, 2019 WY 52, ¶ 21, 441 P.3d 831, 836 (Wyo. 2019). Father concedes that he and Mother filed financial affidavits, supporting documentation, and proposed calculations, but contends the district court did not have adequate information on which to base its decision. He suggests that an evidentiary hearing could have clarified the evidence.

[¶16]  In support of his position, Father relies on *Lemus*. In *Lemus*, the father's affidavit contained inconsistencies regarding his income. The father testified he had three businesses, but the record contained no documentation of income from two of those businesses. *Id.* ¶ 33, 441 P.3d at 839. The district court recognized that the information before it was "incomplete and unsatisfactory." *Id.* ¶ 25, 441 P.3d at 837. Nevertheless, it determined child support without ordering the father to provide clarifying financial information. *Id.* ¶¶ 25, 33, 441 P.3d at 837, 839. We held that the district court abused its discretion "by ordering child support without obtaining sufficient information about [the] Father's income." *Id.* ¶ 33, 441 P.3d at 839.

[¶17]  Here, the parties proposed that their income, child support recommendations, and arguments be presented to the district court in writing and that the district court should decide the matter without a hearing. The district court accepted this proposal. The district court could have ordered the parties to provide more information, or it could have held a hearing. However, it was not required to do so under Wyo. Stat. Ann. § 20-2-308. Unlike *Lemus*, the district court had sufficient information to calculate Father's income. Both Mother and Father presented memoranda and arguments regarding child support and attached financial affidavits, income tax returns, and other supporting documentation.

5

There is no indication in the record that the documentation was incomplete or failed to fully disclose the financial status of the parties. *See* Wyo. Stat. Ann. § 20-2-308.

[¶18] The district court had sufficient evidence to arrive at a clear understanding of Father's income without a hearing and did not abuse its discretion when it relied on the parties' submissions to calculate Father's income and child support.

### III.    *Did the district court abuse its discretion in determining child support?*

[¶19] Father argues that the district court abused its discretion when it calculated his income, refused to deviate downward from the presumptive child support, and did not use a shared responsibility calculation for child support.

### A.    **Standard of Review**

[¶20] A district court has broad discretion in determining the correct amount of child support. *Davidson v. Carrillo*, 2014 WY 65, ¶ 7, 325 P.3d 444, 446 (Wyo. 2014). A district court's order modifying child support, including deviations from presumptive child support, is reviewed for abuse of discretion. *Windham v. Windham*, 2015 WY 61, ¶ 12, 348 P.3d 836, 840 (Wyo. 2015) (citing *Egan v. Egan*, 2010 WY 164, ¶ 7, 244 P.3d 1045, 1048 (Wyo. 2010)).

> A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. *Pinther v. Pinther*, 888 P.2d 1250, 1252 (Wyo. 1995) (quoting *Dowdy v. Dowdy*, 864 P.2d 439, 440 (Wyo. 1993)). Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. *Triggs* [*v. Triggs*], 920 P.2d [653,] 657 [(Wyo. 1996)]; *Cranston v. Cranston*, 879 P.2d 345, 351 (Wyo. 1994). Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. *Jones v. Jones*, 858 P.2d 289, 291 (Wyo. 1993).

*Fleet v. Guyette*, 2020 WY 78, ¶ 36, 466 P.3d 812, 822 (Wyo. 2020) (quoting *Lemus*, ¶ 18, 441 P.3d at 835). "Similarly, an abuse of discretion is present when a material factor deserving significant weight is ignored." *Kidd v. Jacobson*, 2020 WY 64, ¶ 13, 463 P.3d 795, 798 (Wyo. 2020) (internal quotation marks omitted) (quoting *Meehan-Greer v. Greer*, 2018 WY 39, ¶ 14, 415 P.3d 274, 279 (Wyo. 2018)). "We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion

or the presence of a violation of some legal principle." *Id.* ¶ 13, 463 P.3d at 798 (quoting *Meehan-Greer*, ¶ 14, 415 P.3d at 278–79).

**B.      Did the district court abuse its discretion when it calculated Father's income?**

[¶21]  Child support calculations are governed by statute.  Wyo. Stat. Ann. §§ 20-2-301 through -308; *Ackerman v. Ott*, 2014 WY 93, ¶¶ 8–9, 330 P.3d 271, 273 (Wyo. 2014); *Ready v. Ready*, 2003 WY 121, ¶ 12, 76 P.3d 836, 839 (Wyo. 2003).  The first step in calculating child support is to determine each parent's monthly income and net monthly income. *Ackerman*, ¶ 9, 330 P.3d at 273.

> (ii) "Income" means any form of payment or return in money or in kind to an individual, regardless of source.  Income includes, but is not limited to wages, earnings, salary, commission, compensation as an independent contractor . . . and any other payments made by any payor . . . .  In determining income, all reasonable unreimbursed legitimate business expenses shall be deducted. . . .
>
> (iii) "Net income" means income as defined in paragraph (ii) of this subsection less personal income taxes, social security deductions, cost of dependent health care coverage for all dependent children . . . .

Wyo. Stat. Ann. § 20-2-303(a)(ii)–(iii) (LexisNexis 2017).

[¶22]  Father contends that the district court miscalculated his net income when it added certain depreciation deductions to his income.  He argues this was improper because the depreciation was a business expense and affected his cash flow.  Father also contends that the district court should not have added tax-free distributions from Marquis Metal to his income because they constituted "phantom income" not received by him.

### 1. Depreciation

[¶23]  We first address Father's argument regarding depreciation.  The district court concluded that, except for Section 179 deductions,[3] deductions taken for depreciation by Marquis Metal on its federal tax returns were not business expenses.  It added those deductions back to income. *See supra* ¶¶ 7–9.

---

[3] Neither party disputes the district court's treatment of Father's Section 179 deductions.

7

[¶24] As it relates to child support, Wyoming's statutory scheme for calculation of net income is fundamentally different than that of the federal income tax code. *Ackerman*, ¶ 10, 330 P.3d at 273–74; *Houston v. Smith*, 882 P.2d 240, 244 (Wyo. 1994). In calculating income for child support the "focus should be upon the reasonable and legitimate nature of the expense and its impact on the party's actual cash flow in the year in question rather than the treatment of the expense by federal law in the context of income taxes." *Ackerman*, ¶ 12, 330 P.3d at 274 (quoting *Watson v. Watson*, 2002 WY 180, ¶ 16, 60 P.3d 124, 128 (Wyo. 2002)).

[¶25] When calculating a parent's child support obligation, the focus is whether an expense, including depreciation, is a "reasonable unreimbursed legitimate business expense." *Watson*, ¶ 16, 60 P.3d at 128; *see also Ackerman*, ¶ 11, 330 P.3d at 274. The party seeking to deduct depreciation as a business expense bears the burden of proof. *Watson*, ¶ 16, 60 P.3d at 128.

[¶26] In *Houston*, 882 P.2d at 244, the Court considered whether the father's claimed deduction for depreciation of his rental properties was a reasonable unreimbursed legitimate business expense. The Court held that it was not. Amortized depreciation does not directly affect cash flow in later years, and it was improper to allow the same deduction that federal tax law allows when calculating child support. We reasoned that "the purpose of depreciation is to assist a person in **regaining** their expenditures, it does not follow that depreciation is a business **expense** for the calculation of disposable income under the [child support] Guidelines." *Id.* (quoting *Stewart v. Stewart*, 793 P.2d 813, 815 (Mont. 1990)).

[¶27] In contrast, in *Watson*, we examined deductions taken pursuant to Section 179 of the Internal Revenue Code, 26 U.S.C.A. § 179. *Watson*, ¶¶ 5–17, 60 P.3d at 125–29. We held that Section 179 deductions are legitimate business expenses:

> Section 179 permits a taxpayer to request a same-year deduction for the purchase of certain business property, instead of an amortized depreciation deduction over several years. [*Watson*,] ¶ 10, 60 P.3d at 126. Based upon our opinion in *Houston*, the district court in *Watson* did not allow a deduction from income for the Section 179 business expenses. *Id.* ¶ 7, 60 P.3d at 126. This Court reversed, explaining that courts must determine whether the business expense affects the party's actual cash flow during the year in question, or whether it is simply a book entry for federal tax purposes. Because Section 179 property is actually [purchased] in the same year that the deduction is allowed, that kind of expenditure [generally] affects cash flow in that year. Accordingly, we found that the deduction could be

8

considered when determining income in order to set child support. *Id.* ¶¶ 14–16, 60 P.3d at 128.

*Ackerman*, ¶ 11, 330 P.3d at 274.

[¶28] Below, Father argued that the district court should calculate child support based solely on his individual earnings and not consider his business income. The district court rejected Father's argument and attributed to Father a percent of Marquis Metal's business income based on his ownership interest. Father did not address the issue of depreciation in his proposal. The district court recognized Section 179 depreciation as a proper deduction from income but added Father's share of the non-Section 179 depreciation to his income. *See supra* ¶¶ 7–9.

[¶29] Father contends that the district court "misunderstood" Marquis Metal's depreciation deductions. He asserts that a great deal of the depreciation the court considered carryover depreciation was, in fact, current expense that affected cash flow.[4] He argues that it should not have been added back to income.

[¶30] Father carried the burden of proving that the depreciation was a business expense that should not be added to income. *Watson*, ¶ 16, 60 P.3d at 128. He provided no explanation or argument regarding the depreciation deductions taken in the tax returns and did not meet his burden of proof.

[¶31] He provides no authority to support his contention that the disputed depreciation directly affected the current year cash flow. He does not cite to the record to support his argument that the disputed depreciation was an actual expense, reflected cash expenditures, or impacted his cash flow. He cites no caselaw, and this Court can find none, to support his position.

[¶32] The record shows that in 2016 Marquis Metal (at the time, a sole proprietorship owned by Father) claimed a total depreciation deduction of $46,429 and that $23,528 of that amount was attributable to Section 179 property. This left $22,901 in depreciation reasonably considered by the district court as income, in accordance with *Houston*, 882 P.2d at 244. The district court added depreciation, net of the Section 179 deductions, to Father's 2016 income. *Watson*, ¶ 16, 60 P.3d at 128; *see also Ackerman*, ¶ 11, 330 P.3d at 274; *Houston*, 882 P.2d at 244. The record reveals that in 2017, Marquis Metal claimed $261,329 in depreciation expense and $289,418 in Section 179 deductions. The district court added 51% of the depreciation deductions, or $133,278, to Father's business

---

[4] We note that this could happen if debt financed the purchase of the depreciable asset, and the debt payments coincided with the depreciation of the asset. This would be difficult to prove, and Father failed to offer any evidence in this regard.

9

income and deducted his share (51%) of the Section 179 deductions ($147,992). The record shows that in 2018, Father's 51% of Marquis Metal's depreciation was $159,329. The district court found no evidence that any of this depreciation qualified as Section 179 expense and, therefore, added Father's share of the depreciation to income.

[¶33] The district court's calculations are supported by the record and do not exceed the bounds of reason. The district court did not abuse its discretion when it included depreciation in Father's income.

### 2. "Phantom Income"

[¶34] Father also argues that the district court abused its discretion by adding certain distributions from Marquis Metal to his income. He alleges these distributions are phantom income.

[¶35] "Phantom income" is "income resulting from a taxable event from which the taxpayer does not actually receive money." *Madison v. Madison*, 859 P.2d 1276, 1281 n.4 (Wyo. 1993). We considered the question of phantom income in the context of child support in *Bailey v. Bailey*, 954 P.2d 962, 967 (Wyo. 1998). In *Bailey*, the father made distributions to himself from his family corporations. *Id.* He argued that the district court had improperly included the distributions in his income for child support purposes because the distributions were phantom income. We held that "[s]ince the husband is the majority stock holder in two . . . family corporations, he is in a position to control 'phantom income,' in much the same way as he can control his salary" and that the district court did not abuse its discretion when it included a portion of that income in its calculation. *Id.*

[¶36] A majority of courts in other jurisdictions have held, as we did in *Bailey*, that phantom income should be included when calculating child support. *See, e.g.*, *Rieger v. Rieger*, No. CL-2011-3036, 2015 WL 11123349, at *7 (Va. Cir. February 9, 2015) ("a forgivable loan, given to Defendant as a benefit of his employment, constitutes gross income for purposes of calculating child support"); *In re Marriage of Riddle*, 23 Cal. Rptr. 3d 273 (Ct. App. 2005) (father's employer provided him an advance against his future earnings, which it considered an interest-bearing loan and forgave a portion of the loan each month, reporting the loan forgiveness as taxable income; the court concluded that loan forgiveness was income for child support purposes); *Matthews v. Northrup*, No. 01-09-00063-CV, 2010 WL 2133910, at *4 (Tex. App. May 27, 2010) (gift of an interest in a partnership, which would not distribute any profits to its partners until after the death of the general partner or in the year 2052, was income for purposes of child support and the court could assign a reasonable amount of "deemed income" to this asset); *Marron v. Marron*, Nos. CA2013-11-109, CA2013-11-113, 2014 WL 2106731, at *5 (Ohio Ct. App. May 19, 2014) (trial court did not abuse its discretion in including husband's interest in a family owned corporation as income in support calculations because it

increased his wealth and he could exercise control over the investment if he so chose); *Pierce-Gardner v. Gardner*, No. FA054002538S, 2006 WL 1681231, at *7 (Conn. Super. Ct. June 6, 2006) (including phantom income in support calculation); *In re Marriage of Stress*, 939 P.2d 500, 501–02 (Colo. App. 1997) (phantom income consisting of money father received from his employer for his income taxes and to offset the cost of living abroad was properly included in father's gross income because the "monies serve the same function as the balance of father's compensation, that is, to fund his chosen lifestyle and financial obligations in the geographic area in which he resides"); *but see Kelley v. Kelley*, No. 2012-CA-002213-MR, 2014 WL 5359745, at *4 (Ky. Ct. App. Oct. 3, 2014) (Mr. Kelley's employer provided him with stock and an interest free loan and each month, a portion of the loan was forgiven; the court found that Mr. Kelley's loan forgiveness should not be included in his gross income for child support); *Reed v. Reed*, 865 N.Y.S.2d 414 (App. Div. 2008) (phantom income not income for child support); *In re Marriage of Streur*, 955 N.E.2d 497, 500, *as modified on denial of reh'g* (Ill. App. Ct. June 15, 2011) (restating, without comment, the lower court's decision that "phantom income" is not income); *Finucan v. Finucan*, No. 2068-86, 1995 WL 788191, at *2, (Del. Fam. Ct. May 22, 1995) (phantom income consisting of payment to a third party on behalf of the other spouse was not income to the recipient because there was no additional money flowing into the household that would generate a cash flow that the party could practically use for support).

[¶37]  It is difficult to discern from Father's brief exactly which distributions he contends are phantom income.  However, both Marquis Metal's and Father's tax returns show that Father and his wife received distributions of property or money from the company of $133,476 (Father's 51% share was $68,253) in 2017 and $431,072 (Father's 51% share was $219,848) in 2018.[5]  The district court added Father's share of these distributions to his income.

[¶38]  Father contends that these distributions were to pay his tax liabilities and should not have been included in his income.  The district court deducted Father's share of taxes when calculating his net income.  *See supra* ¶¶ 7–9.  Regardless of what Father used the distributions for, the distributions were received by Father from Marquis Metal.  To the extent he used them to pay taxes, these distributions allowed him to retain other income to enhance his wealth.  *See Stress*, 939 P.2d at 501–02.

[¶39]  The district court did not abuse its discretion when it included Father's share of the distributions as income.

---

[5] This Court can find no other evidence in the record of "phantom income" or income that was reflected on Father's (or Marquis Metal's) tax returns but not distributed to Father.  To the extent Father's argument relies on such income, we must reject it.  He has failed to meet his burden of establishing the district court abused its discretion in this regard.

**C.** **Did the district court abuse its discretion when it did not allow a downward deviation from Father's presumptive child support?**

[¶40] Presumptive child support is determined based upon the parents' net incomes. Wyo. Stat. Ann. § 20-2-304(a); *see supra* ¶ 21. Once the district court determines presumptive child support, it has the discretion to deviate from that amount if it finds "that the application of the presumptive child support would be unjust or inappropriate in that particular case." *Windham*, ¶ 13, 348 P.3d at 840 (quoting Wyo. Stat. Ann. § 20-2-307(b)).

> A court may deviate from the presumptive child support established by W.S. 20-2-304 upon a specific finding that the application of the presumptive child support would be unjust or inappropriate in that particular case. . . . In determining whether to deviate from the presumptive child support established by W.S. 20-2-304, the court shall consider the following factors:
>
> > (i) The age of the child;
> > (ii) The cost of necessary child day care;
> > (iii) Any special health care and educational needs of the child;
> > (iv) The responsibility of either parent for the support of other children, whether court ordered or otherwise;
> > (v) The value of services contributed by either parent;
> > (vi) Any expenses reasonably related to the mother's pregnancy and confinement for that child, if the parents were never married or if the parents were divorced prior to the birth of the child;
> > (vii) The cost of transportation of the child to and from visitation;
> > (viii) The ability of either or both parents to furnish health, dental and vision insurance through employment benefits;
> > (ix) The amount of time the child spends with each parent;
> > (x) Any other necessary expenses for the benefit of the child;
> > (xi) Whether either parent is voluntarily unemployed or underemployed. . . .

(xii) Whether or not either parent has violated any provision of the divorce decree, including visitation provisions, if deemed relevant by the court; and
(xiii) Other factors deemed relevant by the court.

Wyo. Stat. Ann. § 20-2-307(b)(i)–(xiii) (LexisNexis 2019). If a court finds that a deviation is warranted, it must set forth detailed findings to support the deviation. *Windham*, ¶¶ 13–14, 348 P.3d at 840–41; *Keck v. Jordan*, 2008 WY 38, ¶ 10, 180 P.3d 889, 892 (Wyo. 2008).

[¶41] The district court considered whether a deviation from the presumptive child support calculation was warranted and concluded that Father "failed to support his assertion of 'substantial contribution' with documentation or evidence" and "has not convinced the Court he is entitled to a downward deviation." Father argues the district court abused its discretion in rejecting a downward deviation.

[¶42] Father first argues that he is entitled to a downward deviation because he is supporting a biological child with his wife and his wife's children from her previous marriage. "[A]lthough the court must initially base the support amount only on the number of minor children on whose behalf the modification proceeding is brought, the court may subsequently take into consideration a party's support obligation to later-born minor children from subsequent marriages." *TSR v. State ex rel. Dep't of Family Servs., Child Support Enf't Div.*, 2017 WY 144, ¶ 8, 406 P.3d 729, 731 (Wyo. 2017). Father asserts on appeal that "the district court was provided information" regarding his support of his later-born child and the other children in his home and that it failed to take that evidence into consideration.

[¶43] In his proposal submitted to the district court, Father argued that a downward deviation was warranted due to his support of his child with his wife. Father did not argue below that he supported his wife's other children. Father's financial affidavit, however, shows Father has four minor children (in addition to the three children who are subject to the modification) who live with him. Father provided no information or argument regarding expenses associated with raising his later-born child or his wife's other children. Father did not provide the district court with information or argument about any child support received for his wife's children. Given the lack of evidence, the district court did not abuse its discretion when it concluded that Father failed to meet his burden.

[¶44] Father also argues that he provides substantial contribution for the care of his and Mother's children, entitling him to a downward deviation. Substantial contribution is not a factor listed as a ground for downward deviation under Wyo. Stat. Ann. § 20-2-307(b). Nevertheless, a party's substantial contribution to the expenses of the children could form a basis for a downward deviation as the contribution might be a "necessary expense[] for

the benefit of the child[ren]," or an "[o]ther factor[] deemed relevant by the court."  Wyo. Stat. Ann. § 20-2-307(b)(x), (xiii).

[¶45] Here, the district court considered whether Father's alleged substantial contribution justified a downward deviation.  Father asserted in his child support proposal that he substantially contributed to the children's care and well-being by providing clothing, outerwear, underwear, bedrooms, utilities, video games, toys, books, meals, motorcycles, bicycles, and vacations during their stays with him.  Father provided no evidence or documentation to support these claims or the nature or extent of his contributions.  The district court concluded that he had not established a substantial contribution and was not entitled to a downward deviation.

[¶46]  Father argues that the district court abused its discretion in concluding that he did not make a substantial contribution because he provided "similar items" to those provided in *Jensen v. Milatzo-Jensen*, 2013 WY 27, ¶ 29, 297 P.3d 768, 778 (Wyo. 2013), where we held that the father's contributions were substantial.  In *Jensen*, "Father's testimony at trial, accompanying exhibits, and briefs [we]re replete with details of his expenses related to the child."  *Id.* ¶ 27, 297 P.3d at 777.  There,

> the receipts and testimony itemize[d] the following expenditures incurred by Father: a full wardrobe including accessories and outerwear, toys, bicycle, video games, stuffed animals, an aquarium, swimming lessons, cheerleading camp, books, membership in a book club, school supplies, arts and crafts materials, all meals, including school lunches, while in Father's custody, increased heating and utility expenses, ski trips, airline tickets, and visits to zoos, museums, and planetariums.  All of this is in addition to the child support obligation he has consistently timely paid to Mother.

*Id.*

[¶47]  While Father claims to have provided similar items to those provided in *Jensen*, his evidence is akin to that presented in *Cranston*.  In *Cranston*,

> [t]he father offered no evidence that he had increased expenses for a larger apartment or home to provide the children with living space while they were in his custody. The father offered no evidence of increased food, heating, or utility expenses while the children were in his custody. Finally, the father offered no evidence of providing for the needs of the children with clothing, toys or other necessities at any time.

14

*Cranston v. Cranston*, 879 P.2d 345, 351 (Wyo. 1994). We held that "[w]ithout evidence of expenses the father incurred while the children were in his custody, the requirements of [shared responsibility for child support established in Wyo. Stat. Ann. § 20-2-304, including substantial contribution,] are not satisfied." *Id.* (citing *In re Marriage of Redford*, 776 P.2d 1149, 1150 (Colo. App. 1989) ("holding that under Colorado child support guidelines, evidence must be submitted regarding additional expenses resulting from shared physical custody")). The father had not established that he had contributed substantially to the expenses of the children. *Cranston*, 879 P.2d at 351.

[¶48] Father has failed to establish he contributed substantially to the expenses of his and Mother's children. The district court did not abuse its discretion when it concluded Father was not entitled to a downward deviation in child support.

**D. Did the district court abuse its discretion when it did not use a shared responsibility calculation?**

[¶49] Finally, Father contends that the district court abused its discretion by not using a shared responsibility support calculation. In order for a shared responsibility support calculation to be warranted, each parent must "keep[] the children overnight for more than twenty-five percent (25%) of the year, and both parents [must] contribute substantially to the expenses of the children in addition to the payment of child support." Wyo. Stat. Ann. § 20-2-304(c). The district court determined that a shared responsibility calculation was not required here because Father did not satisfy either statutory requirement.

[¶50] On appeal, Father argues that the district court erred when it concluded the children did not stay with him for more than 25% of the year and that he had not made substantial contributions to their care in addition to child support. Our conclusion regarding Father's substantial contribution in the preceding section governs here, regardless of whether the children stayed with him for more than 25% of the year. Father did not provide evidence of his contributions; accordingly, the district court did not abuse its discretion when it concluded he did not contribute substantially to the expenses of the children. *See supra* ¶¶ 44–48. Without evidence of substantial contributions, a shared responsibility calculation was not appropriate. *See* Wyo. Stat. Ann. § 20-2-304(c). The district court did not abuse its discretion.

*IV. Is Mother entitled to costs and reasonable attorney fees?*

[¶51] We next consider Mother's request for attorney fees and costs pursuant to W.R.A.P. 10.05(b). Rule 10.05(b) provides that "[i]f the court certifies . . . there was no reasonable cause for the appeal, a reasonable amount of attorneys' fees and damages to the appellee shall be fixed by the appellate court and taxed as part of the costs in the

case." Rule 10.05 sanctions "are generally not available for challenges to discretionary rulings, unless 'an appeal lacks cogent argument, there is an absence of pertinent legal authority to support the issues, or there is a failure to adequately cite to the record.'" *Fleet*, ¶ 66, 466 P.3d at 828 (quoting *Deede v. Deede*, 2018 WY 92, ¶ 10, 423 P.3d 940, 943 (Wyo. 2018)).

[¶52] While we do not find Father's arguments persuasive, and we previously discussed his lack of citation to the record, we cannot certify that he had no reasonable cause for his appeal. Mother is therefore not entitled to Rule 10.05 sanctions.

## *CONCLUSION*

[¶53] The Court will not summarily affirm due to Father's failure to designate the record on appeal. The district court did not abuse its discretion when it did not hold an evidentiary hearing regarding Father's income. The district court did not abuse its discretion when it calculated Father's income, when it did not deviate downward from Father's presumptive child support obligation, and when it did not use a shared responsibility child support calculation. Mother is not entitled to costs and attorney fees. We affirm.